IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:15-CR-153** |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **LIONAL MARTINEZ-OSORIA,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Defendant Lional Martinez-Osoria ("Martinez-Osoria") moves to suppress physical evidence obtained pursuant to a search warrant.  Martinez-Osoria asserts that all evidence seized during the July 7, 2015 search of a residence at 121 West 5th Street in West Hazleton, Pennsylvania, must be suppressed because the affidavit in support of the warrant contained "stale" information.  Martinez-Osoria also seeks to suppress a statement made at the time of the search because his waiver of rights under Miranda v. Arizona, 384 U.S. 436 (1966), was neither knowing nor voluntary. The court will grant in part and deny in part Martinez-Osoria's motion.

I.     **Factual Background**

The following factual narrative derives from Martinez-Osoria's motion and the affidavit of probable cause that is the subject of said motion.  On July 7, 2015, Pennsylvania State Police ("State Police") Trooper Scott Fidler ("Fidler") applied for and received a search warrant for a residence located at 121 West Fifth Street in West Hazleton, Luzerne County, Pennsylvania.  The affidavit of probable cause that accompanied the warrant application included the following pertinent facts: (1) in October of 2014, the State Police began a cocaine investigation in Dauphin

County, Pennsylvania; (2) at an unstated time thereafter, the State Police conducted a controlled buy, resulting in two arrests and a vehicle seizure; a search of the vehicle revealed a handgun registered to Martinez-Osoria; (3) on June 5, 2015, law enforcement observed Martinez-Osoria and a passenger picking up a controlled delivery of representative cocaine in Dauphin County, after which "they" discarded the box but kept the contents; (4) Martinez-Osoria then returned to West Hazleton, where he dropped off his passenger, picked up a female passenger, drove to the 121 West Fifth Street address, and entered the residence with his passenger; (5) during a separate contact with law enforcement shortly after this incident, Martinez-Osoria indicated that he had just picked his girlfriend up at work and taken her home; and (6) State Police officers observed Martinez-Osoria freely coming and going from the residence on June 29, 2015, and July 3, 2015. (Doc. 207-1 at 3). Fidler noted that, in his experience, drug dealers often use the homes of family members and close associates to conceal evidence of their criminal activities. (See id.) Fidler also observed that authorities had obtained an arrest warrant for Martinez-Osoria in Dauphin County on June 29, 2015. (Id.)

State Police executed the warrants at 121 West Fifth Street on July 7, 2015. During the search, authorities seized, *inter alia*, a handgun and ammunition, $4,842 in cash, and a hydraulic kilogram press. (Doc. 207-1 at 7). According to Martinez-Osoria, a language barrier prevented him from fully understanding the Miranda rights read to him during the search. (See Doc. 208 at 5, 11-12). Defense counsel indicates that, during post-arrest questioning, Martinez-Osoria stated that the hydraulic press discovered during the search "was for pressing 'balls.' " (Id.)

2

**II.    Procedural History**

On July 22, 2015, a federal grand jury returned a five-count indictment against Martinez-Osoria and others. (Doc. 1). The indictment charges Martinez-Osoria in Count I with conspiracy to possess with intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine hydrochloride and in Count III with attempted possession with intent to distribute 500 grams or more of cocaine hydrochloride. (Id.) Martinez-Osoria pleaded not guilty to both counts. (Doc. 43). Jury selection and trial are currently scheduled to begin at 9:30 a.m. on February 2, 2016. (Doc. 220). On November 6, 2015, Martinez-Osoria filed the instant motion to suppress, accompanied by a supporting brief. (Docs. 207, 208). On December 7, 2015, at the court's direction, the United States filed a brief in opposition. (Docs. 217, 218). The motion is fully briefed and ripe for disposition.

**III.    Discussion**

Martinez-Osoria seeks suppression of all physical evidence seized during law enforcement's search of the 121 West 5th Street residence. He argues that the affidavit underlying the search warrant contained "stale" information and thus did not establish probable cause, and that his post-arrest statement must be suppressed as a fruit of this unlawful search. Martinez-Osoria alternatively maintains that his post-arrest statement is excludable because his Miranda waiver was unknowing and involuntary. The court will address Martinez-Osoria's arguments *seriatim*.

    **A.    The Warrant Affidavit and Probable Cause**

Under the Fourth Amendment, a search warrant must be issued on the basis of probable cause. U.S. CONST. amend. IV. To establish probable cause, a warrant

3

application must show that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In reviewing a magistrate judge's decision to authorize a warrant based on an affidavit of probable cause, the court must decide whether the magistrate judge had a "substantial basis" for determining that probable cause existed. See United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010). The court gives "great deference" to the issuing judge's assessment and must consider the most reasonable reading of the affidavit. Gates, 462 U.S. at 236; see United States v. Williams, 3 F.3d 69, 72 (3d Cir. 1993).

The probable cause assessment does not require direct evidence linking a place to be searched to a crime. See United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting United States v. Conley, 4 F.3d 1200, 1207 (3d Cir. 1993)). The Third Circuit Court of Appeals has recognized that evidence of drug trafficking "needs to be stored somewhere" and that the most convenient storage location is often the drug dealer's residence. United States v. Whitner, 219 F.3d 289, 298 (3d Cir. 2000). Application of this inference is appropriate when an affidavit is based upon evidence that: (1) "the person suspected of drug dealing is actually a drug dealer;" (2) "the place to be searched is possessed by, or the domicile of, the dealer;" and (3) "the home contains contraband linking it to the dealer's activities." Stearn, 597 F.3d at 559 (quoting United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002)).

Aged information inherently offers less value to this assessment. United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997); United States v. Christie, 570 F. Supp. 2d 657, 680 (D.N.J. 2008). Importantly, age alone will not determine the value

4

of or weight attributable to stale information. See Christie, 570 F. Supp. 2d at 680 (quoting United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993)).  The court should instead undertake a holistic review of the information in the affidavit of probable cause, examining both "the nature of the crime and the type of evidence."  Harvey, 2 F.3d at 1322.

Staleness is less significant when the criminal activity is protracted and ongoing, such as in a drug trafficking conspiracy.  See United States v. Urban, 404 F.3d 754, 774-75 (3d Cir. 2005); see also United States v. Thompson, No. 1:11-CR-77, 2013 WL 594019, at *6 (M.D. Pa. Feb. 15, 2013) (Conner, J.).  When information supporting probable cause reveals "a course or pattern of ongoing and continuous criminality," passage of time between the events identified in the affidavit and the actual submission of the affidavit "loses significance."  Urban, 404 F.3d at 774-75. In this context, the Third Circuit has observed that "intervals of weeks or months" between the acts described and the warrant application may not necessarily render evidence stale when other variables support a finding of probable cause.  United States v. Gallo, 110 F. App'x 265, 268-69 (3d Cir. 2004) (nonprecedential).

The warrant affidavit *sub judice*, dated July 7, 2015, begins by describing events that occurred approximately eight months earlier.  Affiant Fidler indicates that the State Police began an investigation into cocaine trafficking in October of 2014.  (See Doc. 207-1 at 3).  On an undisclosed date thereafter, law enforcement searched a vehicle connected to drug trafficking and discovered a loaded firearm registered to Martinez-Osoria.  (Id.)  Fidler indicates that authorities "intercepted

5

another shipment of cocaine" on June 4, 2015, but does not specifically link that shipment to Martinez-Osoria. (See id.)

The most incriminating evidence relates to events occurring in the month leading up to the search at 121 West Fifth Street. Fidler explains that authorities observed Martinez-Osoria and another passenger picking up a controlled delivery of representative cocaine in Dauphin County on June 5, 2015. (Id.) He and his passenger "discarded the box . . . [but] appeared to keep most of its contents to include the representative cocaine." (Id.) Martinez-Osoria then drove to Hazleton, where he dropped off his first passenger, picked up a female passenger, drove to the 121 West Fifth Street residence, and entered the home. (Id.) Authorities learned shortly thereafter that Martinez-Osoria's girlfriend lived at the 121 West Fifth Street address. (See id.) In the weeks leading up to the warrant application, authorities observed Martinez-Osoria repeatedly coming and going from the residence. (Id.)

This information provided a substantial basis for the magistrate judge's determination that probable cause existed to believe that drugs or drug-related evidence would be found in the 121 West 5th Street residence. Assuming *arguendo* that the October 2014 events are so dated as to be unhelpful, the balance of the affidavit nonetheless describes recent events establishing probable cause to search the residence. The affidavit explains Martinez-Osoria's participation in a controlled buy in Dauphin County one month prior to the warrant application. Immediately following the transaction, while presumably still in possession of the representative cocaine, Martinez-Osoria travelled to the 121 West Fifth Street residence and went inside with a woman believed to be his girlfriend. Surveillance over the ensuing

6

weeks—including just four days before the affidavit was submitted—revealed that Martinez-Osoria came and went freely and used the home as his own residence. Under these circumstances, the information described in the July 2015 warrant affidavit was not stale. Instead, it established a present likelihood that drugs or drug-related evidence were being concealed in the home. The court will deny Martinez-Osoria's motion to suppress the fruits of the July 7, 2015 search.

    **B.**    **Knowing and Voluntary *Miranda* Waiver**

Martinez-Osoria also seeks suppression of a post-arrest statement to law enforcement that the hydraulic press located in the 121 West Fifth Street residence was for "pressing 'balls.'" (Doc. 208 at 5, 11-12). Post-arrest statements by a suspect are admissible only if law enforcement has apprised the individual of his or her Miranda rights and the individual chooses to waive them both voluntarily and knowingly. Miranda, 384 U.S. at 444, 475. This two-pronged inquiry tasks the court to consider: (1) whether the purported waiver was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception," and (2) whether it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Syriuth, 98 F.3d 739, 748-49 (3d Cir. 1996) (quoting United States v. Velasquez, 885 F.2d 1076, 1084 (3d Cir. 1989)). The government bears the burden of establishing waiver of a suspect's Miranda rights. See Colorado v. Connelly, 479 U.S. 157, 168 (1986).

Martinez-Osoria claims that his post-arrest statement was taken in violation of <u>Miranda</u> because language barriers prevented him from fully understanding the nature of the right being waived. (Doc. 208 at 11-12). He concedes that agents did read his <u>Miranda</u> rights during the search, but notes they did so in English, not his native language of Spanish, such that he could not understand his rights. (<u>See</u> <u>id.</u>) Martinez-Osoria indicates that a hearing on this issue may be unnecessary if the government does not intend to introduce this post-arrest statement at trial. (<u>Id.</u> at 12 n.1).

The government does not respond to defense counsel's intimation, nor does it state an intent to present this particular statement at trial. (<u>See</u> Doc. 218). Indeed, the government is silent in response to Martinez-Osoria's <u>Miranda</u> arguments. (<u>See id.</u>) The court construes the government's silence as a declination to oppose this portion of Martinez-Osoria's motion. <u>See</u> LOCAL RULE OF COURT 7.6. Consequently, the court will grant Martinez-Osoria's unopposed request to exclude his post-arrest statement at trial.

## IV. <u>Conclusion</u>

Martinez-Osoria's motion (Doc. 207) will be granted in part and denied in part, as described hereinabove. An appropriate order shall issue.

                                                   /S/ CHRISTOPHER C. CONNER
                                                   Christopher C. Conner, Chief Judge
                                                   United States District Court
                                                   Middle District of Pennsylvania

Dated:       January 4, 2016